UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HERMAN C. NEWMAN, #252038,

        Petitioner,

v.                                                    ACTION NO. 2:05cv623

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254.   The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

## I. STATEMENT OF THE CASE

### A. Background

Petitioner Herman C. Newman ("Newman") was convicted in Fauquier County Circuit Court and Culpeper County Circuit Court for four (4) counts of driving/habitual offender; one (1) count of speeding to elude; three (3) counts of failure to appear; and one (1) count of grand larceny, as a result of which he was sentenced to serve fourteen (14) years, twelve (12) months, and 246 days in

the Virginia penal system.[1]  On March 4, 2004, while incarcerated at the Greensville Correctional Center, Newman was charged with violation of an institutional infraction for possession of a sharpened instrument/weapon (Offense Code 102, a Category I offense in which the authorized penalty includes isolation for up to fifteen (15) days).  On March 15, 2004,[2] Newman accepted a penalty offer in which he agreed to plead guilty to the charged offense, and for which he received a ten-day penalty to be served in isolation, with credit for time served.

On April 13, 2005,[3] Newman filed a <u>pro se</u> petition for a writ of habeas corpus in the Supreme Court of Virginia because he allegedly was never advised of certain adverse consequences that would follow from his acceptance of the penalty offer and

---

[1]According to his petition, Newman appealed the merits of his convictions to the Supreme Court of Virginia, which denied his appeal and affirmed his convictions.  He did not appeal that decision to the United States Supreme Court.  Newman does not, in this proceeding, attack the merits of those underlying convictions.

[2]Newman's petition misstated that the penalty offer was accepted on March 14, 2004.  The Penalty Offer Form indicates otherwise, but that error does not appear relevant to his claim in the instant petition.

[3]While Newman's state petition for habeas corpus was received by the Supreme Court of Virginia on April 18, 2005, the petition appears to have been executed on April 13, 2005.  The Court notes that a Virginia Supreme Court Special Rule, effective September 1, 2004, recognizes a prison mailbox rule for inmate filings in the Virginia trial courts: a paper is timely filed by an inmate when "deposited in the institution's internal mail system with first-class postage prepaid on or before the last day of filing."  Va. Sup. Ct. R. 3A:25.  The Court has applied this rule in considering Newman's state habeas petition as filed on April 13, 2005.

concomitant plea of guilty to the institutional infraction.  On June 17, 2005, the Supreme Court of Virginia summarily dismissed Newman's petition as frivolous.

On September 26, 2005, while in the custody of the Virginia Department of Corrections at Sussex II State Prison in Waverly, Virginia, Newman filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and paid the requisite $5.00 filing fee.[4]  By Order entered on November 2, 2005, the Court ordered Respondent to file his Rule 5 answer to the petition within thirty (30) days.[5]  On December 1, 2005, Respondent filed his Rule 5 Answer and Motion for Summary Judgment accompanied by a supporting memorandum and a Notice of Motion Pursuant to Local Rule 7(K).  By Order entered on December 21, 2005, the Court granted Newman's motion seeking additional time to file his response to the

---

[4]Newman appears to have executed the federal petition for habeas corpus and deposited it in the prison mailing system on September 26, 2005.  The petition was received by the United States District Court for the Eastern District of Virginia, Richmond, on October 11, 2005, and was filed with this Court on October 18, 2005.

The Court notes that the United States Supreme Court promulgated certain amendments to the Rules Governing Section 2254 Cases in the United States District Courts, which became effective on December 1, 2004.  As amended, Rule 3(d) adopts the prison mailbox rule with regard to § 2254 petitions.  Accordingly, the Court recognizes the prison mailbox rule for federal habeas petitions.  The Court has applied this rule in considering Newman's federal habeas petition as filed on September 26, 2005.

[5]This order also amended Newman's petition to substitute as the sole respondent in this proceeding Gene M. Johnson, Director of the Virginia Department of Corrections.

3

summary judgment motion, and he was ordered to respond on or before January 23, 2006.   Newman filed his brief in opposition to Respondent's motion for summary judgment on January 11, 2006.

## B. <u>Grounds Alleged</u>

Newman now asserts in this Court that he is entitled to relief under 28 U.S.C. § 2254, for the reason substantially as follows:

> (a)   He was denied due process and equal protection of the law, in violation of his Eighth and Fourteenth Amendment rights, because following his acceptance of the penalty offer and guilty plea to the institutional infraction, for which he was supposed to receive only a ten-day penalty in isolation, with credit for time served, he was confined in isolation/segregation for ninety (90) days, he lost eleven (11) months of Good Conduct Allowance ("GCA") time, and he was reclassified to a higher security institution and higher class level, all of which resulted in his parole eligibility date being moved.

Newman's state habeas petition filed in the Supreme Court of Virginia asserted substantially the same claim for relief as alleged here.   The Supreme Court of Virginia dismissed the petition on June 17, 2005, as frivolous.   Newman did not file an appeal with the United States Supreme Court.   The Court also construes Newman's petition as requesting an evidentiary hearing.

## II. <u>REQUEST FOR AN EVIDENTIARY HEARING</u>

As a preliminary matter, the Court considers Newman's request for an evidentiary hearing.   The Court has determined that an evidentiary hearing is not required, since purely legal issues are

presented and the record before the Court adequately resolves the legal issues raised.  <u>See</u> Rule 8(a) of the Rules Governing Section 2254 Cases.  The pertinent facts are not in dispute; Newman simply disagrees with the interpretation and assessment of the facts. Accordingly, the Court FINDS that Newman's request for an evidentiary hearing is hereby DENIED.

### III.  <u>ANALYSIS</u>

As set forth below, because the Court FINDS that Newman's claims fail as a matter of law, the Court thereby recommends that Respondent's motion for summary judgment be granted.

### A.  <u>Standard for Summary Judgment</u>

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);[6] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321 (1986).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  <u>Id.</u> Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact that requires trial.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). When making the summary judgment determination, the facts and all

---

[6]Rule 11 of the Rules Governing Section 2254 Cases provides that the Federal Rules of Civil Procedure apply to Section 2254 cases so long as those rules are not inconsistent with statutory provisions or the Rules Governing Section 2254 Cases.

reasonable inferences must be viewed in the light most favorable to the non-moving party.  <u>Smith v. Va. Commonwealth Univ.</u>, 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

**B. <u>Claims Rejected on the Merits in State Habeas Proceedings</u>**

A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).  In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000). <u>See also</u> <u>Bell v. Jarvis</u>, 236 F.3d 149, 157 (4th Cir. 2000) (recognizing that, for claims adjudicated on the merits by the state court, the federal court "is limited by the deferential standard of review set forth in § 2254(d), as interpreted by the Supreme Court in <u>Williams</u>[].") Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has

been violated." Williams, 529 U.S. at 387.  Moreover, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be [objectively] unreasonable." Id. at 411.

Newman alleges that the state court erred in summarily dismissing his state habeas petition as frivolous.  Specifically, Newman alleges that, following his acceptance of the penalty offer and plea of guilty to the institutional infraction, he received a number of punishments, including loss of good conduct time, without due process that had the adverse effect of delaying his parole eligibility date.  This, argues Newman, violated his constitutional rights under the Eighth and Fourteenth Amendments.  Because the Supreme Court of Virginia summarily refused Coleman's petition for appeal, but failed to articulate the rationale behind its ruling, this Court must independently review the record and the applicable law for purposes of adjudicating Newman's federal habeas petition. Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (recognizing that under the AEDPA federal courts are "no longer permitted to review de novo [a state court's] decision on the merits") (citations omitted).  Nevertheless, "a summary state court decision on the merits of a federal constitutional claim is an 'adjudication' of the claim for purposes of [28 U.S.C.] § 2254(d) . . . ." Id.

Accordingly, this Court's standard of review remains deferential, see Williams, supra; Bell, 236 F.3d at 163.

In this case, Newman presents at least a facial claim that the state court ruling violated his constitutional rights. The success of such a claim does not turn on whether in this Court's judgment the state court erred in ruling on a state law claim or whether this Court would find a constitutional violation if presented with an analogous factual scenario in the context of a federal criminal trial. Bell, 236 F.3d at 162-63 (it is not the role of the federal habeas court to "independently ascertain[]" whether a petitioner's constitutional rights were violated during state court proceedings). Instead, this Court may not grant relief on any claim previously adjudicated on the merits in state court unless one of the two statutory exceptions applies. See 28 U.S.C. § 2254(d). See also Bell, 236 F.3d at 163 (state court's summary decision must be upheld unless federal court's independent review of the record reveals that result of state court's decision is "legally or factually unreasonable" under the AEDPA) (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)). See also Harris v. Stovall, 212 F.3d 940, 943 n.1 (6th Cir. 2000) ("Where a state court decides a constitutional issue by form order or without extended discussion, a [federal] habeas court should then focus on the result of the state court's decision, applying the standard articulated" by the AEDPA) (emphasis added).

**C. <u>Circumstances Surrounding Newman's Guilty Plea</u>**

The Court first recognizes that Newman readily admits that he pled guilty to the institutional infraction as part of his acceptance of the penalty offer. The following chronology of events leading to that guilty plea and Newman's appeal of his plea is pertinent to the Court's recommendations here.

On March 4, 2004, while incarcerated at the Greensville Correctional Center, Newman was charged with an institutional violation for "possession of a sharpened instrament [sic]." On March 5, 2004, Newman was provided a copy of the Disciplinary Offense Report, which he signed and which indicated that his disciplinary hearing was to be scheduled for March 11, 2004. On March 12, 2004, Newman was advised in writing that his disciplinary hearing had been postponed and rescheduled for March 15, 2004.[7] On March 15, 2004, in lieu of a disciplinary hearing, Newman signed a Penalty Offer Form, indicating his acceptance of the penalty offer in which he was to plead guilty to the offense and to receive ten (10) days in isolation with credit for any time previously served

---

[7]The reasons for the postponement are not entirely clear from the record, but it appears that the corrections officer who filed the charge against Newman was not available on the date of the original hearing. In any event, it appears that Newman was advised of the postponement and when presented with and asked to sign the Notice of Hearing Date/Postponement Form, which was dated March 12, 2004, he refused.

for that offense.[8]  Newman's acceptance of the penalty offer was
recorded on the second page of the Disciplinary Offense Report by
S. Lawrence, an Inmate Hearings Officer, on March 16, 2004.  At
that time, Newman's case was then referred to the Institutional
Classification Authority ("ICA") for review.  On April 8, 2004, an
ICA hearing was conducted, as a result of which Newman's security
classification level was changed from Level II to Level IV, and his
Good Conduct Allowance ("GCA") level was changed from Level I to
Level II.[9]  As a result of the changes in his GCA and security
levels, Newman was transferred to a higher security installation
and he began earning less good conduct time (earning twenty (20)
days of good time for every thirty (30) days served with good
behavior, as opposed to the thirty (30) days of good time earned
for every thirty (30) days served with good behavior that he was

---

[8]The Court notes that it appears from the record that Newman
had at this point already served ten (10) days in isolation, since
he was apparently held in "pre-hearing detention" from the date of
the offense, March 4, 2004, through and including March 13, 2004.

[9]Newman has argued that he was unaware of the ICA hearing in
the first instance; however, the record reflects that on April 2,
2004 Newman was presented with and signed a Institutional
Classification Authority Hearing Form that advised him the ICA
hearing was scheduled for April 8, 2004.  Though Newman appears to
have written "1-2-04" as the date on which he signed that form, the
form was also signed by a witness who dated the form "April 2,
2004," which the Court concludes is the date Newman actually signed
the form.  The Court also notes that the results of the April 8,
2004 hearing, recommending his change in status, were recorded on
another Institutional Classification Authority Hearing Form, but
Newman was unable to sign the form to acknowledge its receipt
because he was "cuffed from behind."

previously earning).  This had the effect of changing his projected release date because it also changed the amount of good conduct time that Newman is projected to have earned.  On April 12, 2004, Newman appealed the results of his case to the Warden, who denied the appeal and upheld the charge on June 17, 2004.[10]  During the pendency of the appeal, the decision of the ICA hearing was approved by the Warden on April 20, 2004, and by Central Classification Services on May 18, 2004.

Here Newman does not assert his innocence of the underlying infraction or challenge directly the voluntariness of his acceptance of the penalty offer and the accompanying guilty plea.

---

[10]As grounds for the appeal, Newman contended that "my penalty offer were [sic] not voluntary," because he claims he was never informed that he would lose his right to appeal the charge once he accepted the penalty offer.  The Court notes that the Penalty Offer Form, which Newman signed, stated that the only grounds for appeal of a penalty offer acceptance is for the limited purpose of making a "determination of whether there was a guilty plea, whether there was an acceptance of a penalty offer and whether there was any serious procedural error."  In denying his appeal, the Warden noted that Newman did in fact accept the penalty offer as recorded on the Penalty Form of March 15, 2004, which the Court notes explicitly contained an admission of guilt to the infraction and an express waiver of any right to appeal on grounds other than those stated supra, and that there were no procedural errors to justify the modification/disapproval of the disposition of his case.

Newman also contended that the proceedings were flawed because he was not timely served a continuance of his original hearing date.  The Warden also rejected that contention because Newman was in fact advised that the hearing has been postponed and was provided 24-hours notice of when the hearing was to be rescheduled.  The Court further notes, in any event, that Newman's argument appears to have been mooted by his acceptance of the penalty offer on March 15, 2004 in lieu of going through with the disciplinary hearing.

Nor does Newman challenge the direct consequence of his acceptance of the penalty offer, i.e., the ten-day sentence in isolation/segregation.  Instead, Newman asserts that he was not advised of certain collateral consequences that would follow his acceptance of the penalty offer.  Specifically, Newman complains that he lost eleven (11) months of good conduct allowance time, he was confined in isolation/segregation for ninety (90) days, and he was moved to a higher-security institution and given an increased security classification – all of which resulted in the delay of his parole eligibility date.  Respondent argues, and the Court concurs, that these collateral consequences followed the ICA's review of his case, which resulted in the subsequent reclassification of his GCA and security levels, and were not a direct result of the infraction for which he was convicted.  The Court thus construes Newman to further argue, in the alternative, that Respondent should not have referred his case to the ICA for review following his conviction for the instant offense.

According to Respondent, the ICA conducts annual reviews to determine, among other things, the appropriate level of good conduct time and security level for each inmate based on evaluations completed by the inmate's counselor.  Respondent characterized this review as an "annual review," but the Court

finds, as Newman has correctly pointed out,[11] that this characterization does not comport with the circumstances in several respects.  First, Newman asserts and Respondent does not contest that Newman's last "annual review" before this incident was completed in December, 2003, and the affidavit of Rita Odom, submitted in support of Respondent's Motion for Summary Judgment, stated in November, 2005 that "Newman's next annual review will be conducted at the end of this year, 2005."  It stands to reason, therefore, that the ICA annual reviews are conducted at the end of the calendar year.  Second, the Classification Summary Report completed by the ICA, dated April 8, 2004 and attached as Enclosure B to the Odom affidavit, indicated that it was an "Administrative Review" as opposed to an "Annual Review."  Nevertheless, the Court finds that the ICA's review of Newman's GCA and security levels, which resulted in his reclassification, was not unreasonable under the circumstances – especially considering the serious nature of the offense to which he pled guilty.[12]  See Sandin v. Conner, 515

---

[11]The Court notes that Newman does not appear to contest that an ICA review was conducted; however, he does challenge the characterization of it as an annual review, arguing instead that it was an "interm [sic]" review.

[12]The Court notes that according to the IAC's Inmate Reclassification Score Sheet, the possession of a sharpened instrument (Offense Code 102), to which Newman pled guilty, is considered among the "highest" in severity and accounts for approximately sixty-five (65) percent of the points Newman accrued on his security reclassification form (twenty (20) points out of a total score of thirty-one (31) points).

U.S. 472, 484-87 (1995) (state's imposition of disciplinary segregation for prisoner's conviction for "high misconduct" was not disproportionate to the expected range of confinement for such an offense).

As to the first exception under 28 U.S.C. § 2254(d), there is nothing to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law.  Both Newman and Respondent have cited Wolff v. McDonnell, 418 U.S. 539 (1974), which stands for the proposition that certain due process protections must be afforded an inmate in connection with prison disciplinary proceedings in cases where the result of the proceeding includes the loss of good conduct time.  Id. at 561 (recognizing that "[t]he deprivation of good conduct time is unquestionably a matter of considerable importance[, which the state] reserves [] as a sanction for serious misconduct," but "it is qualitatively and quantitatively different from revocation of [the inmate's] parole or probation").  As the Supreme Court explained in Sandin, supra, Wolff and its progeny addressed certain procedural aspects of the disciplinary proceedings afforded the prisoner and limited any resulting due process considerations to punishments that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  Indeed, as Respondent correctly points out, neither Wolff nor Sandin require

14

that an inmate be given any particular warnings about possible collateral consequences before pleading guilty in a disciplinary proceeding, which is the gravamen of Newman's complaint here.  The Fourth Circuit has stated, in the context of a prisoner's challenge to a guilty plea, that "[a]lthough a defendant must be aware of the direct consequences of his guilty plea in order for it to be knowing and voluntary, . . ., the failure to inform a defendant about a collateral consequence, such as deportability, does not render the guilty plea involuntary." United States v. Al-Hababeh, 72 Fed. Appx. 929, 931 (4th Cir. (Va.), August 13, 2003 (citing Brady v. United States, 397 U.S. 742, 755 (1970); Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365-66 (4th Cir. 1973) (recognizing that "[t]he distinction between 'direct' and 'collateral' consequences of a plea, . . ., turns on whether the result represents a definite, immediate and largely automatic effect on the defendant's punishment")).  Thus, as in this case, when the outcome of the ICA's review, which led to Newman's reclassification, was "not 'a definite, practical consequence of the [guilty] plea[,]' but [was] discretionary with the prison authorities," there was no obligation to warn Newman of the possibility of such a collateral consequence prior to accepting his guilty plea.  Cuthrell, 475 F.2d at 1366.

The Court further notes that none of the other cases cited by

Newman, including <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973),[13] support his contention that the state court acted unreasonably or contrary to controlling Supreme Court precedent.  In <u>Rodriquez</u>, for example, the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  <u>Id.</u> at 500.  Under <u>Rodriquez</u>, however, a civil rights action under 42 U.S.C. § 1983 was found not to be a permissible alternative for a state prisoner to challenge the deprivation of good-time credits as a result of a disciplinary hearing.  <u>Id.</u>  That point of law is not in dispute here: Respondent does not dispute Newman's right to seek relief by submitting a federal habeas petition, and the Court's

---

[13]The Court notes that Newman also cited <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005) for the proposition that "any punishment imposed after the initial sentence is invalid [sic]."  Courts within the Fourth Circuit, however, have consistently held that neither <u>Blakely</u> nor <u>Booker</u> have been made retroactively applicable to cases on collateral review.  <u>See, e.g.</u>, <u>United States v. Johnson</u>, 146 Fed. Appx. 656, 657 (4th Cir. 2005); <u>Smith v. U.S.</u>, 2005 WL 2657386 at *2 (E.D. Va.); <u>Diaz-Rodriquez v. U.S.</u>, 2005 WL 3533423 at *2 n.2 (W.D. Va.).  Newman's guilty plea was entered on March 15, 2004, and his IAC review was conducted on April 8, 2004, both of which predate the Supreme Court's decisions in <u>Blakely</u> (on June 24, 2004) and in <u>Booker</u> (on January 12, 2005).  The Court finds, in any event, that Newman's reliance on these cases is misplaced insofar as any "punishment" he incurred after the initial ten-day sentence resulted from the IAC's review, <u>supra</u>, which occurred after his guilty plea and the imposition of his ten-day sentence and which was a separate proceeding from the underlying disciplinary proceeding.

recommendation herein does not turn on the holding of that case. Instead, based on the Court's independent review of the record, it does not appear that the result of the state court's decision to dismiss Newman's habeas petition was legally unreasonable.

Moreover, there is nothing to suggest that adjudication on the merits by the state court was based on an unreasonable determination of the facts, which is the second exception under 28 U.S.C. § 2254(d). Newman was made aware of the direct consequences of accepting the penalty offer, namely, that he would receive a ten-day sentence in isolation in exchange for his guilty plea to the institutional offense. He was also advised that acceptance of the penalty offer was entirely voluntary, and that by doing so he was giving up his rights to appeal the conviction except for very limited grounds. The conviction was administratively reviewed and upheld, and Newman exercised his rights to appeal the conviction, and that appeal was denied. The Court recognizes that Newman's GCA and security levels were administratively reviewed in an ancillary proceeding, which occurred after and outside of the disciplinary hearing for the underlying offense, and that the results of those reviews were impacted by Newman's conviction for the underlying offense. Nevertheless, given the gravity of the infraction that Newman admitted that he committed, the Court does not view the result of the ICA review as unreasonable under the circumstances.

Accordingly, this Court FINDS that the result of the state

court's decision in dismissing Newman's habeas petition is neither legally nor factually unreasonable.  As such, the Court recommends that Newman's petition be DENIED.

## IV.  **RECOMMENDATION**

For the foregoing reasons, the Court, having denied Newman's motion for an evidentiary hearing, recommends that Newman's petition for a writ of habeas corpus be DENIED, that Respondent's motion for summary judgment be GRANTED, and that all of Newman's claims be DISMISSED WITH PREJUDICE.

Newman has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

## V.  **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's

specific objections within ten (10) days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72(b).

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).



/s/
F. Bradford Stillman
United States Magistrate Judge

Norfolk, Virginia

May 17, 2006

19

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Herman C. Newman, #252038
Sussex 2 State Prison
24427 Musselwhite Dr.
Waverly, Virginia 23891
PRO SE

Mark R. Davis, Esq.
Senior Assistant Attorney General
Public Safety & Enforcement Division
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219


Fernando Galindo,
Acting Clerk of Court


By: _____
Deputy Clerk
May    , 2006